# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Case No.: _____

APPLIANCE RECYCLING CENTERS
OF AMERICA, INC. and
APPLIANCESMART, INC.,

      Plaintiffs,

v.

A AND A QUALITY APPLIANCE, INC.,
and CHARLES E. EWING,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

For its Complaint against Defendants A and A Quality Appliance, Inc. ("Appliance Factory") and Charles E. Ewing ("Ewing" and with Appliance Factory, collectively, "Defendants"), Plaintiffs Appliance Recycling Centers of America, Inc. ("ARCA") and ApplianceSmart, Inc. ("ApplianceSmart" and with ARCA, collectively, "Plaintiffs"), state and allege as follows:

### PARTIES

1.      ARCA is a Minnesota corporation with its corporate headquarters at 175 Jackson Avenue North, Suite 102, Minneapolis, MN 55343.  ARCA is in the business of, among other things, recycling major appliances.

2.      ApplianceSmart is a Minnesota corporation with its corporate headquarters at 175 Jackson Avenue North, Suite 102, Minneapolis, MN 55343.  ApplianceSmart is in the business of retail sales of major appliances.  ApplianceSmart is a wholly owned subsidiary of ARCA.

3.      Defendant A and A Quality Appliance, Inc. is a Colorado corporation with its corporate headquarters at 321 W. 84th Avenue in Thornton, Colorado.  The company does business under the "Appliance Factory and Mattress Kingdom" name and is the business of selling appliances and mattresses.

4.      Defendant Charles E. Ewing is an individual residing in the State of Colorado. Ewing is the chief executive officer of Appliance Factory.

## NATURE OF THE CASE

5.      Under the guise of reviewing Plaintiffs' confidential and proprietary trade secret information (the "Trade Secret Information," as further defined herein) for the purpose of engaging in an acquisition transaction, Defendants unlawfully misappropriated such information and used it to open a competing store in Columbus, Ohio, damaging Plaintiffs.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this dispute under 28 U.S.C. § 1331 because Plaintiffs have brought a claim under a federal statute.

7.      In addition, this Court has supplemental jurisdiction over the state law claims asserted herein under 28 U.S.C. § 1367, because those claims arise out of the same operative facts as Plaintiffs' Defense of Trade Secrets Act claims and "form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

8.      This Court has general and specific jurisdiction over the Defendants.  Appliance Factory has its principal place of business in the District of Colorado, transacts business and has continuous and systematic contacts in the District of Colorado, and has committed acts of trade secret misappropriation in the District of Colorado.  Ewing resides in the District of Colorado,

transacts business and has continuous and systematic contacts in this District, and has committed acts of trade secret misappropriation in this District.

9.      Venue is proper pursuant to 28 U.S.C. § 1391.

**FACTS**

10.      ApplianceSmart is in the business of selling major appliances.

11.      ApplianceSmart possesses confidential and proprietary trade secrets it uses in the conduct of its business consisting of the terms of its relationships with suppliers; its methods of conducting its business; its financial status; certain of its financial results; performance details of individual stores, including sales volume, gross and net revenues, and operating expenses; and buying practices, leases, pricing policies, inventory make-up, and costing (collectively, the "Trade Secret Information").  The Trade Secret Information has economic value in permitting ApplianceSmart to perform in a competitive marketplace.  Disclosure of its trade secrets to competitors would diminish ApplianceSmart's competitive position.

12.      ApplianceSmart and its parent ARCA protect the confidential and proprietary nature of ApplianceSmart's trade secrets by maintaining a code of ethics that requires employees to preserve the confidentiality of trade secrets and other confidential information; by including confidentiality provisions in employment agreements with company officers; by requiring each employee to execute a confidentiality agreement; and by requiring the execution of nondisclosure agreements with third parties as a condition of disclosing confidential and proprietary information in the course of prospective or actual business transactions.

13.      As of April 10, 2017, ApplianceSmart and Appliance Factory entered into a nondisclosure agreement (the "NDA") in conjunction with discussions regarding a possible

purchase by Appliance Factory of ApplianceSmart from ARCA.  The NDA provided for disclosure to Appliance Factory of "material nonpublic information" about ApplianceSmart, and restricted the use of such information to the "Business Purpose" of the disclosure, i.e., Appliance Factory's "request for a presentation on the business of" ApplianceSmart.

14.     Pursuant to, and in reliance on, the NDA, ApplianceSmart and ARCA provided Trade Secret Information to Defendants.  Plaintiffs provided detailed confidential and valuable financial and operational information about ApplianceSmart's business for the sole purpose of permitting Appliance Factory and Ewing to conduct due diligence with respect to the possible purchase of ApplianceSmart by Appliance Factory.  The Trade Secret Information included performance details of individual stores, including sales volume, gross and net revenues, and operating expenses at ApplianceSmart's store on Sawmill Place Boulevard in Columbus, Ohio.

15.     Because Defendants never made a reasonable offer to Plaintiffs for the purchase of ApplianceSmart, Plaintiffs are informed and believe and on that basis allege that Defendants entered into the NDA for the impermissible purpose of misappropriating Plaintiffs' trade secrets and that Defendants have in fact misappropriated Plaintiffs' trade secrets, in particular the confidential and proprietary information Plaintiffs provided to Defendants relating to the operations and performance of ApplianceSmart's Sawmill Place Boulevard store.

16.     In or about June 2017, Defendants retained the services of Mark G. Eisenschenk, ARCA's former chief executive officer.  Eisenschenk is in possession of Trade Secret Information, including material, nonpublic, proprietary information regarding ApplianceSmart's and ARCA's business.

4

17.     As the former CEO of ARCA, Eisenschenk had a fiduciary duty not to disclose such information, especially not to a competitor.  At all relevant times, Defendants knew that Eisenschenk was the former CEO of ARCA, and therefore owed a fiduciary duty to Plaintiffs based on information gained during his employment.  Eisenschenk was also bound by the confidentiality provisions of his July 22, 2013 employment agreement with ARCA, his restated employment agreement with ARCA dated February 9, 2015, and his severance agreement with ARCA dated May 29, 2015.

18.     In the restated employment agreement, Eisenschenk agrees that, after the termination of his employment with ARCA, he will "hold in the strictest confidence, will keep secret, and will not disclose, use, or publish, any of [ARCA's] Confidential Information."

19.     Plaintiffs are informed and believe and on that basis allege that Defendants maliciously and willfully misappropriated proprietary, nonpublic information about ApplianceSmart from Eisenschenk that Eisenschenk was not authorized to provide, in particular information in relation to the operations and performance of ApplianceSmart's Sawmill Place Boulevard store in Columbus, Ohio.

20.     Plaintiffs are informed and believe and on that basis allege that, in or about June 2017, Defendants sought to hire Bradley Bremer, the president of ApplianceSmart.  Bremer was in possession of Trade Secret Information relating to ApplianceSmart's and ARCA's business.  Specifically, Bremer had intimate, detailed knowledge of ApplianceSmart's buying practices, leases, pricing policies, inventory make-up and costing, and a detailed understanding of all of ApplianceSmart's key vendor relationships and contracts.  Bremer also had detailed, intimate

5

knowledge of the operations and performance of ApplianceSmart's Sawmill Place Boulevard store in Columbus, Ohio.

21.     As the then-president of ApplianceSmart, Bremer had a fiduciary duty not to disclose such information, especially not to a competitor.

22.     At all relevant times, Defendants knew that Bremer was president of ApplianceSmart and thus owed a fiduciary duty to Plaintiffs.  In June 2017, Plaintiffs provided Defendants with a copy of their agreement with Bremer, which included confidentiality and non-compete obligations.

23.     Bremer had expressly agreed that he would not "use, publish or otherwise disclose, either during or after my employment, any unpublished or proprietary or confidential information or secret relating to the Company or the conduct of its business or operation." (Appliance Recycling Centers of America, Inc. Employee Disclosure, Confidentiality and Assignment Agreement dated Jan. 27, 2000.)  Bremer had also agreed that for two years after the termination of his employment with ApplianceSmart he would not "compete with the Company in the development, production, or sale of any product or service with which I was involved while employed by the Company."  *Id.*  The agreement containing those terms is governed by Minnesota law.

24.     Plaintiffs are informed and believe and on that basis allege that Defendants maliciously and willfully misappropriated Trade Secret Information relating to ApplianceSmart from Bremer that Bremer was not authorized to provide.

25.     Plaintiffs are informed and believe and on that basis allege that Defendants maliciously and willfully misappropriated Trade Secret Information from Bremer concerning

ApplianceSmart's buying practices, leases, pricing policies, inventory make-up and costing, key vendor relationships, and key contracts.

26.     Plaintiffs are informed and believe and on that basis allege that Defendants maliciously and willfully misappropriated Trade Secret Information derived from Bremer's knowledge of the operations and performance of ApplianceSmart's Sawmill Place Boulevard store in Columbus, Ohio.

27.     On or about October 31, 2017, Defendants announced the opening of an Appliance Factory Store at 6440 Sawmill Road in Columbus, Ohio, virtually across the street from the ApplianceSmart store at 2620 Sawmill Place Boulevard.  Defendants opened their new Sawmill Road store in Columbus on or about November 24, 2017.

28.     Appliance Factory is a Colorado company.  It has never had a store outside of Colorado, and has never had a store in Ohio.  Yet shortly after obtaining Plaintiffs' business information and hiring ARCA's former CEO and offering a job to ApplianceSmart's president, Defendants have opened a store across the street from ApplianceSmart.

29.     Plaintiffs are informed and believe and on that basis allege that Defendants maliciously and willfully misappropriated Trade Secret Information obtained under the NDA and from Eisenschenk and Bremer in developing a new Appliance Factory store on Sawmill Road in Columbus, Ohio.

30.     Plaintiffs are informed and believe and on that basis allege that Defendants have developed and have opened their store on Sawmill Road in Columbus, Ohio based on Trade Secret Information that Defendants have maliciously and willfully misappropriated from Plaintiffs.

US.115329150.01

31.     Plaintiffs have been damaged by Defendants' conduct, which has diminished the value and economic prospects of Plaintiffs' Sawmill Place Boulevard store.  By the conduct alleged herein, not limited to the harm to Plaintiffs' Sawmill Place Boulevard store, Plaintiffs have been damaged in an amount greater than $75,000.

**COUNT ONE**
**MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION**
**OF 18 U.S.C. § 1832**

32.     Plaintiffs re-allege the matters set forth in Paragraphs 1 through 31 and incorporate the same by reference as if set forth in full herein.

33.     Plaintiffs have developed Trade Secret Information, including information that is confidential and not shared outside of the Plaintiff entities without confidentiality protections.

34.     Plaintiffs' Trade Secret Information was not readily ascertainable by proper means by other persons at the time it was disclosed to Defendants.

35.     Defendants' Trade Secret Information derives actual and potential independent economic value from not being generally known to, or readily ascertainable by proper means by, other persons who might obtain economic value from its disclosure or use.

36.     Plaintiffs have taken efforts, reasonable under the circumstances, to protect the confidentiality of material information relating to its Trade Secret Information.

37.     Plaintiffs' Trade Secret Information constitutes trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. § 1839.  By virtue of its business relationship with Plaintiffs, Defendants had access to and acquired Plaintiffs' Trade Secret Information under circumstances giving rise to a duty to Plaintiffs to maintain the secrecy of this information and limit its use.

US.115329150.01

38.     Defendants accessed, used, and/or disclosed, and continue to access, use, and/or disclose, such information without the express or implied consent of Plaintiffs, for the benefit of Defendants and not for the benefit of Plaintiffs.  Such access, use, and/or disclosure constitute misappropriation of trade secrets.

39.     Plaintiffs' Trade Secret Information is related to products and services used in and intended to be used in interstate commerce.

40.     Defendants' misappropriation of trade secrets was willful and malicious.

41.     By the conduct alleged herein, Defendants have violated 18 U.S.C. § 1832, which defines misappropriation of trade secrets.

42.     As a result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer direct, irreparable harm and actual and consequential damages, in amounts to be proven at trial.

## COUNT TWO
## MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF COLO. REV. STATS. §§ 7-74-101—7-74-110

43.     Plaintiffs re-allege the matters set forth in Paragraphs 1 through 42 and incorporate the same by reference as if set forth in full herein.

44.     The Trade Secret Information constitutes valid trade secrets under Colo. Rev. Stat. § 7-74-102(4).

45.     Plaintiffs have developed Trade Secret Information, including information that is confidential and not shared outside of the Plaintiff entities without confidentiality protections.

46.     Plaintiffs' Trade Secret Information was not readily ascertainable by proper means by other persons at the time it was disclosed to Defendants.

US.115329150.01

47.     Defendants' Trade Secret Information derives actual and potential independent economic value from not being generally known to, or readily ascertainable by proper means by, other persons who might obtain economic value from its disclosure or use.

48.     The Trade Secret Information is secret and of value.

49.     Plaintiffs have taken efforts, reasonable under the circumstances, to protect the confidentiality of material information relating to its Trade Secret Information.

50.     By virtue of its business relationship with Plaintiffs, Defendants had access to and acquired Plaintiffs' Trade Secret Information under circumstances giving rise to a duty to Plaintiffs to maintain the secrecy of this information and limit its use.

51.     Defendants accessed, used, and/or disclosed, and continue to access, use, and/or disclose, such information without the express or implied consent of Plaintiffs, for the benefit of Defendants and not for the benefit of Plaintiffs.  Such access, use, and/or disclosure constitute misappropriation of trade secrets.

52.     As a result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer direct, irreparable harm and actual and consequential damages, in amounts to be proven at trial.

## COUNT THREE
## TORTIOUS INTERFERENCE WITH CONTRACT

53.     Plaintiffs re-allege the matters set forth in Paragraphs 1 through 52 and incorporate the same by reference as if set forth in full herein.

54.     Plaintiffs were parties to confidentiality agreements with Bremer and Eisenschenk under which these parties agreed to maintain the confidentiality of and not use or disclose confidential information of Plaintiffs.

US.115329150.01

55.     Defendants knew or reasonably should have known of the contracts.

56.     Defendants, by words or conduct, or both, intentionally caused Bremer and Eisenschenk to breach their contracts with Plaintiffs.

57.     Defendants' interference with the contracts was improper.

58.     As a result of Defendants' interference with the contracts, Plaintiffs have suffered and will continue to suffer direct, irreparable harm and actual and consequential damages, in amounts to be proven at trial.

## COUNT FOUR
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

59.     Plaintiffs re-allege the matters set forth in Paragraphs 1 through 58 and incorporate the same by reference as if set forth in full herein.

60.     Bremer and Eisenschenk owe fiduciary duties to Plaintiffs arising from their employment agreements and positions as officers.

61.     Bremer and Eisenschenk have breached fiduciary duties they owed to Plaintiffs.

62.     By the conduct alleged herein, Defendants have wronged Plaintiffs by aiding and abetting breaches of fiduciary duty by Bremer and Eisenschenk.

63.     As a result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer direct, irreparable harm and actual and consequential damages, in amounts to be proven at trial.

## COUNT FIVE
## UNJUST ENRICHMENT

64.     Plaintiffs re-allege the matters set forth in Paragraphs 1 through 63 and incorporate the same by reference as if set forth in full herein.

11

65.     By the conduct alleged herein, Defendants have enriched themselves in circumstances in which it would be unjust to permit Defendants to retain their gains.

66.     Plaintiffs therefore seek damages according to proof, including exemplary damages.

**WHEREFORE**, Plaintiffs ARCA and ApplianceSmart pray for judgment against Defendants jointly and severally as follows:

1.     For money damages in an amount to be proved at trial;

2.     For exemplary damages for Defendants' willful and malicious misappropriation of trade secrets pursuant to 18 U.S.C. § 1836(b)(3) and C.R.S. § 7-74-104;

3.     For injunctive relief prohibiting Defendants from operating their store on Sawmill Road in Columbus Ohio; prohibiting the continued misuse of Plaintiffs' trade secrets; prohibiting Defendants from misappropriating further trade secrets from Plaintiffs; and requiring Defendants to dispossess themselves of all nonpublic information regarding Plaintiffs' businesses obtained from Plaintiffs, Eisenschenk, Bremer, or any other source.

4.     For attorneys' fees, costs, and disbursements allowed by applicable law;

5.     For prejudgment interest; and

6.     For such other and further relief as the Court shall deem just and proper.

### JURY DEMAND

Plaintiffs hereby demand trial by jury on all issues so triable.

Dated:  December 5, 2017

*s/ Heather Carson Perkins*
Heather Carson Perkins
FAEGRE BAKER DANIELS
3200 Wells Fargo Center
1700 Lincoln Street

Denver, CO 80203
Telephone: 303-607-3500
Facsimile: 303-607-3600
Email: heather.perkins@FaegreBD.com

William G. Carpenter
BRIOL & ASSOCIATES, PLLC
3700 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone:  (612) 756-7777
Facsimile:  (612) 337-5151
Email: bill@briollaw.com

*ATTORNEYS FOR PLAINTIFFS APPLIANCE
RECYCLING CENTERS OF AMERICA, INC. and
APPLIANCESMART, INC.*

Plaintiffs' Address:

175 Jackson Avenue North, Suite 102
Minneapolis, MN 55343

US.115329150.01